UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANY DRAPER, | ) | CIV. 12-4091-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Stephany Draper, moves for reversal of the Commissioner of

Social Security's decision to terminate her Supplemental Security Income

(SSI) benefits under Title XVI of the Social Security Act. Docket 12. The

Commissioner opposes this motion. Docket 15. The court affirms.

**BACKGROUND**

Stephany Draper was born in 1987 and suffered a traumatic brain

injury following a car accident in June of 2006. AR 42.[1] Following the

accident, Draper applied to the Social Security Administration (agency) for

SSI benefits in August of 2006. AR 25. Her application was denied because

she possessed resources worth more than $2,000, the maximum amount of

resources an individual may possess and still remain eligible for benefits

under the program. AR 28. After exhausting those resources, Draper filed a

new application for SSI benefits in June of 2007. AR 34. The application

---

[1] All citations to "AR" refer to the appropriate page of the administrative
record.

was granted, and Draper began receiving disability insurance benefits (DIB) that month in addition to SSI. AR 41.

In November of 2006, Draper transferred power of attorney to her parents, John and Krystal Draper. AR 82. The durable power of attorney agreement granted Draper's parents the power to "fund, transfer assets to, and to instruct and advise the trustee of any trust wherein [Stephany Draper is] or may be the trustor or beneficiary." AR 83 ¶ 7. On February 12, 2008, Draper's parents signed documents establishing the Stephany Ann Draper Special Needs Trust (trust). AR 86. The trust was funded with a single $429,259.41 deposit, an amount exactly equal to the net proceeds of Draper's personal injury settlement from the car accident. AR 86, 99, 171. Draper's parents were attempting to set up a "special needs trust" under the requirements of 42 U.S.C. § 1396p(d)(4)(A).[2] The purpose of the trust was to provide Draper with supplemental and/or emergency medical care that was not covered by public assistance programs, while still preserving Draper's eligibility for those programs. AR 86-87. Article VI of the trust granted the trustees the power to alter or amend the trust in order to maintain compliance with any law or to otherwise assure Draper would remain eligible for public assistance programs. AR 91.

In March of 2009, the agency sent Draper a notice informing her that her trust "[did] not meet the criteria to exclude the principal of the trust as a

---

[2] The court will discuss the requirements necessary to establish a § 1396p(d)(4)(A) trust in greater detail below.

resource for [SSI] purposes," and the agency was terminating her benefits because she again possessed resources greater than the $2,000 limit. AR 68, 74. The notice explained that when a trust is funded with the beneficiary's own assets the trust is considered a resource for determining SSI eligibility. AR 68. The agency considered Draper's trust to have been established with her own assets because her assets were transferred to her trust other than by will and, thus, could not be excluded as a resource. AR 68.

In October of 2009, Draper appealed the agency's decision to an administrative law judge (ALJ). AR 175. In May of 2010, the ALJ ruled that the trust did not fulfill all of the requirements necessary to qualify as a special needs trust under 42 U.S.C. § 1396p(d)(4)(A). AR 22-23. Relying on the agency's Program Operations Manual System (POMS), the set of publicly available operating instructions used by the agency to process Social Security claims,[3] the ALJ concluded that Draper's parents were acting as her agent under the durable power of attorney, rather than as her parents, when they funded and established the trust. AR 22-23. Because Draper's trust was not a valid special needs trust, the trust corpus was considered to be a resource, pushing Draper's assets above the $2,000 limit and making her ineligible for SSI from February of 2008 through September of 2008.[4] AR

---

[3] The court will discuss the legal status and deference owed to POMS in greater detail below.

[4] The ALJ also found that Draper was not overpaid from July of 2007 through January of 2008, reversing the position of the agency's Denver field

23. The ALJ, however, waived recovery of the overpaid amount because Draper was "without fault" and recovery would be against equity and good conscience. AR 23-24.

In July of 2010, Draper appealed the ALJ's decision to the Social Security Appeals Council alleging that the trust was established by her parents. AR 11. In the interim, Draper's parents filed a petition for modification of the trust in the South Dakota Third Judicial Circuit Court (state court). AR 400. Draper's parents requested that the state court amend several provisions of the trust to bring it into conformance with 42 U.S.C. § 1396p(d)(4)(A) and to allow Draper to reapply for SSI benefits. AR 401. In November of 2010, the state court approved the requested modifications of the trust *nunc pro tunc*, effective February 12, 2008, with the state court listed as the settlor of the trust. AR 401.

In March of 2012, the Appeals Council denied Draper's request for review of the ALJ's decision. AR 3. The Appeals Council stated that the trust did not meet the requirements for a special needs trust exemption because Draper's parents established the trust with her own resources while acting as her agents, rather than as her parents, thus affirming the decisions of the ALJ. AR 4. The Appeals Council also considered the state court's modification of the trust but found it did not provide a basis for changing the ALJ's decision. AR 4. The Appeals Council stated that to satisfy § 1396p(d)(4)(A), a court must "establish" the trust through court order,

─────────────────────

office. AR 22. That ruling is not at issue in this appeal.

rather than merely list the court as the settlor of the trust. AR 4. Because the Appeals Council denied Draper's request for review of the ALJ's decision, it is the ALJ's decision, and not the Appeals Council's denial of review, that is the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. § 422.210(a) ("A claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review. . .”). Draper now appeals that decision to this court. Docket 1.

## STANDARD OF REVIEW

The court will affirm the Commissioner's denial of benefits if substantial evidence in the record as a whole supports the decision, and the Commissioner correctly applied the relevant legal standards. 42 U.S.C. § 405(g); *Mason v. Barnhart,* 406 F.3d 962, 964 (8th Cir. 2005).

Substantial evidence is "less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have determined the case differently. *Krogmeier v. Barnhart*,

294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

When additional evidence is submitted to the Appeals Council that was not presented to the ALJ, evaluating the decision of the ALJ under the substantial evidence test becomes "a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). In that case it must be clear that the Appeals Council has considered the newly submitted evidence when denying the plaintiff's request for review. *Id.* Once the court concludes that the Appeals Council has considered the newly submitted evidence, the court's role is focused on deciding whether the ALJ's decision is supported by substantial evidence on the record as a whole, including the newly submitted evidence. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). At that point, the newly submitted evidence becomes part of the administrative record, even though the evidence submitted was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992). The relevant issue for the court becomes whether the newly submitted evidence changes the court's conclusion that there is substantial evidence to support the ALJ's decision. *Id.*

When reviewing the Commissioner's decision to determine if an error of law has been committed, courts must look for procedural errors, the use of erroneous legal standards, or the improper application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). These issues of law are reviewed de novo. *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

**DISCUSSION**

Draper argues that the ALJ erred in terminating her benefits because the ALJ improperly relied on POMS SI 01120.203B to conclude that her trust did not qualify as a special needs trust. Docket 12 at 3-4. POMS SI 01120.203B interprets 42 U.S.C. § 1396p(d)(4)(A) and excludes those trusts that are funded with the beneficiary's own resources and are created by the beneficiary, or an agent acting on behalf of the beneficiary, from qualifying for the special needs exemption. To meet the § 1396p(d)(4)(A) exemption, POMS SI 01120.203B requires that the trust be established either by the beneficiary's parents or through court order. Draper argues that these requirements are inconsistent with the plain language of § 1396p(d)(4)(A). Docket 12 at 3.

In reviewing whether POMS SI 01120.203B conflicts with § 1396p(d)(4)(A), the court begins its statutory interpretation inquiry by asking "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). The court must ask two questions in this case. First, has Congress directly spoken on whether parents acting under a durable power of attorney agreement are still "parents"? Second, has Congress directly spoken on whether court approval of a trust is the same as a court order "establishing" a trust? If Congress has addressed these questions then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.

If the intent of Congress is not clear, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Determining whether the agency's interpretation is permissible requires the court to determine what level of deference the agency's interpretation warrants, and whether that interpretation can be sustained under that given level of deference. *United States v. Mead Corp.*, 533 U.S. 218, 227-229 (2001).

## I.     Congress Has Not Directly Spoken to the Precise Question

The court first considers Draper's argument that the POMS guidelines are inconsistent with the requirements necessary to create a special needs trust set forth in 42 U.S.C. § 1396p. She argues that the plain text of § 1396p(d)(4)(A) forecloses the agency from qualifying the term "parent" to exclude those parents acting under a durable power of attorney and from qualifying the term "establish" to exclude those trusts merely approved, rather than ordered by a court. Docket 12 at 3-4.

All but a narrow class of assets are counted as resources when determining SSI eligibility. *See generally* 42 U.S.C. § 1382b; *see also Sable v. Velez*, 388 F. App'x 235, 237-38 (3d Cir. 2010) (discussing § 1382b and concluding that after 1999 creation of the special needs trust exemption "all trusts and trust-like devices are considered resources unless explicitly excluded by statute."). One such explicit exemption is § 1396p(d)(4)(A), which operates to exempt qualifying trusts from counting towards a beneficiary's resource limit for purposes of 42 U.S.C. § 1382b. Subsection

(d)(4)(A) provides that the disqualification from eligibility for SSI benefits does not apply to:

> A trust containing the assets of an individual under age 65 who is disabled (. . . ) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(A). There is no dispute that Draper was under the age of 65 and disabled when the trust was established and that the trust was established for her benefit with all amounts remaining in the trust, up to the total amount of assistance paid on her behalf, to revert to the State upon her death. Docket 12 at 3; Docket 15 at 12. But the Commissioner and Draper differ in their interpretation over what capacity Draper's parents were acting in when they created the trust and whether a court order established the trust.

## A. "Established . . . By a Parent"

Draper and the Commissioner disagree over whether her parents were acting under a durable power of attorney, and whether that renders her trust ineligible for the § 1396p(d)(4)(A) exemption. Docket 12 at 4; Docket 15 at 12. Draper argues that the Commissioner's decision to treat parents who act under a durable power of attorney as agents, rather than parents, is neither found in the plain language of the statute nor supported by law. Docket 12 at 5. In contrast, the Commissioner argues that trusts established under a durable power of attorney should be treated as though

the trust was established by an individual herself because a durable power of attorney establishes an agency relationship. Docket 15 at 12. The court finds that this is the type of interpretive question that Congress did not directly speak to when drafting § 1396p(d)(4)(A). *Chevron*, 467 U.S. at 842.

First, the plain language of § 1396p(d)(4)(A) offers no indication that Congress addressed the question of whether parents acting under a durable power of attorney are still "parents" for § 1396p(d)(4)(A) purposes. Section 1396p, Subchapter XIX, and Chapter 7 of Title 42 do not define parent, which is the most basic indicator as to whether or not Congress contemplated the precise issue at hand. *Chevron*, 467 U.S. at 851. Conventional legal definitions of "parent" are also unhelpful here as none can be construed as addressing the precise issue raised on appeal.[5]

Second, the structure and statutory language contained in the remainder of § 1396p, Subchapter XIX, and Chapter 7 of Title 42, also fail to offer any direct evidence that Congress considered this question. *Id.* at 859. There is only one provision within the section that could be construed to

---

[5] The common definition of parent is:

> The lawful father or mother of someone. In ordinary usage, the term denotes more than responsibility for conception and birth. The term commonly includes (1) either the natural father or natural mother of a child, (2) either the adoptive father or the adoptive mother of a child, (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an individual or agency whose status as guardian has been established by judicial decree. . . .

Black's Law Dictionary 1144 (8th ed. 2004).

address this issue. 42 U.S.C. § 1382b(e) sets forth guidelines to determine which trusts will be included or excluded from the SSA resource limit for those receiving SSI funds. Subsection (e)(2)(A) states that "[f]or purposes of this subsection, an individual shall be considered to have established a trust if any assets of the individual (or of the individual's spouse) are transferred to the trust other than by will." 42 U.S.C. § 1382b(e)(2)(A).

While this subsection appears to include transfers executed through a durable power of attorney, subsection (e)(5) states that "[t]his subsection shall not apply to a trust described in subparagraph (A) or (C) of § 1396p(d)(4) of this title." It is not clear from this language whether Congress meant to prevent other provisions contained in § 1382b from being imported into § 1396p(d)(4) (such as the (e)(2)(A) power of attorney requirement) or whether this language simply means that trusts that qualify under § 1396p(d)(4) should not be imported into § 1382b for resource determination. Thus it appears that Congress has not addressed this particular issue. *Chevron*, 467 U.S. at 843.

Third, Draper argues that adding any requirements or modifications to the term "parent" changes the meaning of the statute. Docket 12 at 4-5. Translating her argument into the *Chevron* framework, she contends that Congress directly spoke to this issue by exclusion, using the term "parent" and not some other specific term like "parent, except when acting under an agency relationship." This argument is unpersuasive absent an indication from Congress that the Commissioner is precluded from qualifying the

language contained in § 1396p(d)(4)(A). In fact, the entire *Chevron* approach fundamentally rejects Draper's position that agencies play no role in interpreting ambiguous statutes. *Chevron*, 467 U.S. at 843. This is especially true for interpretations advanced by the Social Security Administration, an agency Congress has explicitly granted authority to fill in statutory gaps. 42 U.S.C. § 405(a) ("The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions. . ."); *see also Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (noting Congress has granted the SSA "exceptionally broad authority to prescribe standards"). Thus the court concludes that Congress's decision to use the term parent does not mean that the word could never be qualified or further defined by the agency. Congress did not speak to the matter. *Chevron*, 467 U.S. at 843.

Finally, the broader purpose and legislative history of the Social Security Act do not shed light on whether Congress foreclosed the agency from interpreting "parent" to exclude parents who had a power of attorney over their adult children. The purpose of Pub. L. No. 106-169, the amendment to the Social Security Act that granted the special needs trust exemption for Social Security beneficiaries, was to "provide States with more funding and greater flexibility in carrying out programs designed to help children make the transition from foster care to self-sufficiency, *and for*

*other purposes.*" Foster Care Independent Act of 1999, Pub. L. No. 106-169, 113 Stat. 1822 (emphasis added). The relevant modification to § 1382b, which added rules for counting trusts, was inserted into a section entitled "SSI Fraud Prevention," which presumably was "for other purposes." *Id.* The bill lacked discussion over any definition, expansive or restrictive, of parent and contained no restrictions on the Commissioner's general ability to make rules and regulations. *Id.*

The court concludes that this question was not contemplated by Congress. At this point it would be inappropriate for the court to weigh the merits of Draper's interpretations of "parent" versus those advanced by the Commissioner. The only role for the court is to examine what level of deference the agency's construction of "parent" should be granted. *Chevron*, 467 U.S. at 843. Before engaging in this *"Chevron* Step Two" analysis, however, the court will address Draper's other "*Chevron* Step One" argument.

### B. "Established . . . By a Court"

Draper and the Commissioner also disagree over whether the trust was "established" by a state court. Docket 12 at 7; Docket 15 at 17. Draper contends that the state court's *nunc pro tunc* order listing the court as the settlor of the trust confirms that the state court established the trust. Docket 12 at 7. The Commissioner argues that the court merely modified, rather than established, the trust. Docket 15 at 17. After examining the plain language of § 1396p, Subchapter XIX, and Chapter 7 of Title 42, as

well as the purpose behind the legislation, the court concludes that Congress also did not speak to this issue.

First, § 1396p(d)(4)(A), Subchapter XIX, and Chapter 7 of Title 42 all lack statutory definitions for "establish," indicating that Congress did not speak to this precise issue. *Chevron*, 467 U.S. at 851. Conventional legal definitions are also unhelpful, as *Black's Law Dictionary* defines "establish" as: "1. To settle, make, or fix firmly; to enact permanently. . . 2. To make or form; to bring about or into existence. . ." *Black's Law Dictionary* 586 (8th ed 2004). Even assuming that Congress intended to ascribe one of the above meanings to § 1396p(d)(4)(A), the court would be unable to differentiate between Draper's and the Commissioner's interpretations. Court *approval* of a trust would "enact permanently" or "bring about or into existence" a trust. At the same time, if a court *ordered* the *creation* of the trust, this would "enact permanently" or "bring about into existence" the trust. Both interpretations are reasonable under *Black*'s definition. There is nothing in the remaining statutory text or structure of the act that would allow a reviewing court to conclude that one interpretation was necessarily the meaning Congress intended. Thus Congress has not addressed the precise issue. *Chevron*, 467 U.S. at 843.

Second, the broader purpose and legislative history contained in the Social Security Act are unhelpful. Neither party's interpretation speaks to the question of SSI fraud prevention, nor of providing states with greater flexibility to ensure foster children can transition to adult life, which are the

14

stated purposes of the Act. Foster Care Independent Act of 1999, Pub. L. No. 106-169, 113 Stat. 1822; *see also* 42 U.S.C. § 405(a). Again there is no indication from Congress that the Commissioner should be foreclosed from interpreting the word "establish" to exclude court actions that approved the creation of a trust. Therefore, the next question is what level of deference the agency's construction of the statute merits. *Chevron*, 467 U.S. at 843.

## II. The Agency's Interpretation Is Not Entitled to *Chevron* Deference but Should Be Evaluated Under *Skidmore*

Having concluded that Congress did not directly address the precise question at issue on appeal, "the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron*, 467 U.S. at 843. Instead, the court analyzes to what, if any, deference the POMS interpretation is entitled. *Mead*, 533 U.S. 227-229.

The overwhelming number of agency interpretations that have qualified for *Chevron* deference are the product of either notice-and-comment rulemaking or formal adjudication. *Mead*, 533 U.S. at 230. Although the lack of formal process does not make other agency interpretations *per se* ineligible for *Chevron* deference, reviewing courts have found "few, if any" instances of agency manuals warranting *Chevron* deference. *Estate of Landers v. Leavitt*, 545 F.3d 98, 106 (2d Cir. 2008). This dearth of *Chevron* deference is due in part to the "ample reasons to deny

*Chevron* deference" to non-legislative rules that lack the "force of law."[6] *Mead*, 533 U.S. at 231-32.

The Commissioner has "full power and authority to make rules and regulations and to establish procedures" to administer the Social Security Act. 42 U.S.C. § 405(a). Such a grant of authority from Congress is normally a "very good indicator" that an agency interpretation should be accorded *Chevron* deference. *Mead*, 533 U.S. at 229. But in *Mead*, the Court noted that *Chevron* deference is appropriate only when an agency actually exercises its formal grant of authority and "produces regulations or rulings for which deference is claimed." *Id.* POMS was not promulgated through the agency's formal grant of authority discussed in *Mead. Id.*; *see also* 5 U.S.C. §§ 553, 554 (explaining the Administrative Procedure Act's requirements of notice-and-comment rulemaking and formal adjudication). The agency has litigated POMS interpretations[7] post-*Mead* and has declined to argue that they deserve *Chevron* deference, conceding instead that POMS "lacks the administrative formality or other attributes that would justify substantial

---

[6] A rule has the "force of law" when it contains "certain substantive characteristics," is "the product of certain procedural requisites," and "affect[s] individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 302 (1979).

[7] None of the cases cited concerned POMS 01120.203B but because none of the POMS were the product of formal adjudication or notice-and-comment rulemaking this does not change the analysis.

judicial deference under *Chevron*[.]" *Power v. Barnhart*, 292 F.3d 781 (D.C. Cir. 2002).

Even without such a concession from the Commissioner, reviewing courts have declined to grant POMS interpretations *Chevron* deference and have instead granted *Skidmore* deference to POMS interpretations, both before and after the Supreme Court's reformulation of the scope of *Chevron* and *Skidmore* in *Mead. See Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004) (discussing *Washington State Dep't Of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003)); *see also Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000). "*Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference. . . ." *Mead*, 533 U.S. at 234.

Because POMS SI 01120.203B is not the product of formal adjudication or notice-and-comment rulemaking, and the Commissioner does not contend that POMS SI 01120.203B is due *Chevron* deference, the court concludes that POMS SI 01120.203B should be evaluated under *Skidmore* deference rather than *Chevron* deference.[8]

---

[8] *Mead* does raise the possibility of granting *Chevron* deference to manuals like POMS, but none of the factors chronicled in *Mead* are present in this case. *Mead*, 533 U.S. at 231. Also, because the court concludes that the agency interpretation will be sustained under the less deferential approach outlined in *Skidmore,* it is not necessary to explore this question. *See Doe v. Leavitt*, 552 F.3d 75, 80 (1st Cir. 2009) (declining to examine whether agency interpretation merits *Chevron* deference when it was persuasive under *Skidmore*).

### III. POMS SI 01120.203B Is Persuasive Under *Skidmore*

Under the framework established in *Skidmore*, agency interpretations like POMS are entitled to deference because they "constitute a body of experience and informed judgment[.]" *Skidmore*, 323 U.S. at 134. The amount of deference granted to such interpretations depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* Application of these factors has yielded "a spectrum of judicial responses, from great respect at one end to near indifference at the others." *Mead*, 533 U.S. at 228. Much of the difference in deference granted by reviewing courts is the result of reviewing courts assessing and balancing the competing reasons to grant or deny the deference outlined in *Skidmore*, including judicial respect for agency expertise and judicial oversight to prevent arbitrary agency action. *See Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850 (8th Cir. 2008) (discussing *Skidmore* factors and range of *Skidmore* deference in context of Board of Immigration Appeals opinion letters)*;see also* Kristen E. Hickman & Matthew D. Krueger, *In Search of the Modern Skidmore Standard*, 107 Colum. L. Rev. 1235, 1252-55 (2007) (surveying Court of Appeals decisions and concluding that reviewing courts uphold agency interpretations under *Skidmore* when such interpretations reflect agency's expertise and mitigate

the possibility of arbitrary action). With these factors in mind the court analyzes the Commissioner's interpretation.

## A. Agency Expertise

There are two factors in this case that persuade the court that the Commissioner's interpretation of § 1396p(d)(4)(A) reflects the agency's long-standing expertise to administer the Social Security Act.

First, Congress has routinely relied on the expertise of the Commissioner to fill statutory gaps because "[t]he Social Security Act is among the most intricate ever drafted by Congress." *Schweiker*, 453 U.S. at 43. Reviewing courts should be mindful of this expertise when interpreting whether the agency's interpretation is reasonable. *See Barnhart v. Walton*, 535 U.S. 212, 225 (2002). With that expertise in mind, the court finds nothing in § 1396p(d)(4)(A) that would limit the Commissioner's ability to fill the gap created by Congress. The court is not persuaded by Draper's argument that statutory silence concerning the meaning of "parent" and "establish" indicates that no qualifying interpretations could be placed on those terms. That approach is incompatible with Congress's reliance on the expertise of agencies to fill the gaps of the statutes they administer. See *Barnhart*, 535 U.S. at 225; *see also Chevron*, 467 U.S. at 843.

Second, the Commissioner's decision to place heightened requirements on special needs trusts, as expressed in the POMS guidelines, is consistent with Congress's command that all but a narrow class of an

individual's assets count as a resource when determining the financial need of a potential SSI beneficiary. *See generally* 42 U.S.C. § 1382b. The court should not speculate about the wisdom or scope of such a policy choice, provided that the interpretation reflects the agency's expertise and authority. *See Barnhart*, 535 U.S. at 225 (upholding agency's permissible interpretation in spite of court's speculation about the wisdom and implications of agency's interpretation).

## B. Arbitrariness

The Commissioner's use of POMS reflects not only the expert opinion of the agency, but POMS SI 01120.203B also appears to foreclose the agency from acting in an arbitrary fashion for two reasons. First, the court is unaware of any contrary interpretations of § 1396p(d)(4)(A) advanced by the agency since the enactment of the Foster Care Independence Act. While agencies need not adopt a static definition of a term when Congress leaves a gap, *Chevron*, 467 U.S. at 841, long-standing and consistent interpretations are looked upon favorably by reviewing courts. *Skidmore*, 323 U.S. at 140; *see also Walton*, 535 U.S. at 221 (sustaining the agency's interpretation in part because the interpretation was "longstanding"). Consistently applied interpretations carry a particular assumption of reasonableness, for it is unlikely that unreasonable and arbitrary interpretations would persist over time. *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740 (1996). A second reason to conclude that the agency's interpretation mitigates the risk

of arbitrary agency action is that the interpretation is universally applicable and not merely a convenient litigation position advanced by the agency. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (declining to grant deference to an interpretation that only emerged during litigation rather than through previous agency action).

Draper argues that POMS PS 01825.046[9] should be stricken from the record because it purports to act as national authority, but she misconstrues the use of this document. POMS PS 01825.046 was not the basis upon which the Commissioner relied in denying Draper's appeal. AR 4. Instead, POMS PS 01825.046 explains, in great detail, the agency requirements for special needs trust, in an effort to illustrate to potential SSI beneficiaries the various requirements necessary to establish a trust that complies with § 1396p(d)(4)(A). By offering this interpretation as a universally applicable standard, POMS PS 01825.046 is an attempt to communicate the agency's desire to uniformly apply the agency standards

---

[9] POMS PS 01825.046 is part of section PS "Title XVI Regional Chief Counsel Precedents" which lists actual case studies to provide the public with general guidance on how the agency processes claims. POMS SI 01120.203B is part of section "SI" Supplemental Security Income, which describes the actual rules and principles the agency used. The agency used POMS SI 01120.203B to determine that Draper was ineligible for benefits. After Draper's case was presented to the Appeals Council the agency developed POMS PS 01825.046 to inform the public that a trust must be established by the actions of a parent, grandparent, legal guardian, or a court, as POMS SI 01120.203B interprets those terms. The ALJ and Appeals Council did not rely on POMS PS 0182.046 in denying Draper SSI benefits. Thus, all of Draper's due process arguments concerning POMS PS 01825.046 are not relevant.

so future beneficiaries may rely on the agency's previous interpretation. Creating predictability with reasonable constructions of ambiguous statutes decreases the chance of arbitrary and adverse outcomes for litigants, which is one of the fundamental justifications for granting agencies deference. *Skidmore*, 323 U.S. at 140.

POMS SI 01120.203B reflects the Commissioner's expertise and is unlikely to produce arbitrary agency action because it is universally applied. As a result, this court concludes that POMS SI 01120.203B is persuasive and thus a permissible interpretation of 42 U.S.C. § 1396p(d)(4)(A). *Chevron*, 467 U.S. at 843; *Skidmore* 323 U.S. at 140.

## IV.     Application of POMS SI 01120.203B to the ALJ's Opinion

Normally, once a court concludes that the agency's interpretation reasonably fills the statutory the gap left by Congress, the court's work is complete, because courts must defer to an agency's permissible interpretation of an ambiguous statute. *Chevron*, 467 U.S. at 843. Courts normally do not conduct an independent review of an ambiguous statute, for such an approach deprives the agency's interpretation of deference. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 304 (3d Cir. 2012). But Draper's case presents unique state law wrinkles for the court to navigate because POMS SI 01120.203B specifically entertains the possibility that state law may alter the agency's interpretation in two ways in this case. First, if Draper's parents were not acting as her agent under South Dakota

law, the trust would comply with the § 1396p(d)(4)(A) requirements. Second, if South Dakota law permits seed or dry trusts, and Draper's parents established a seed or dry trust, POMS SI 01120.203B would treat her trust as qualifying for the § 1396p(d)(4)(A) exemption.

### A. Power of Attorney

Draper disputes the ALJ's conclusion that her parents were acting under a power of attorney when they established her trust. Docket 18 at 1. She makes three arguments purporting to prove that her parents acted in their role as parents and not as her agent: (1) the durable power of attorney was created so her parents could act on her behalf while she was in the hospital, (2) the durable power of attorney did not include the ability to establish a trust, and (3) the trust makes no reference to the durable power of attorney agreement. Docket 18 at 2.

Draper first argues that the durable power of attorney was drafted two years before the trust was created and its purpose was to allow Draper's parents to act on her behalf while she was in the hospital.[10] Docket 18 at 2. This argument lacks merit because "[u]nless the [durable power of attorney]

---

[10] This argument was not raised during the administrative proceedings, but was argued before the Appeals Council. AR 357-58. Because the Appeals Council declined review, it is the ALJ's decision and not the Appeals Council's denial of review, that is the final decision of the Commissioner for judicial review. 20 C.F.R. § 422.210(a). In effect, this court is reviewing a finding of the ALJ that the ALJ never considered. But, because the question of power of attorney is one of law, which the court reviews de novo, and because courts may affirm, modify, or reverse the Commissioner "with or without remanding the cause for a rehearing[]," 42 U.S.C. § 405(g), we treat this question as a de novo review.

states a time of termination, the authority of the agent is exercisable notwithstanding lapse of time since the execution of the instrument." SDCL 59-7-9. There is no clause in the durable power of attorney terminating the durable power of attorney relationship upon Draper leaving the hospital. AR 82-85. In fact, several provisions of the trust contemplate Draper's parents acting on her behalf after she left the hospital, AR 82-85, and Draper never affirmatively argues that the durable power of attorney was not in effect at the time the trust was created, Docket 18 at 2. The court rejects this first argument.

Draper next contends that the durable power of attorney did not grant her parents the ability to establish a trust.[11] Docket 18 at 2. This argument is contradicted by the durable power of attorney document itself, which grants Draper's parents the power "to fund, transfer assets to, and to instruct and advise the trustee of any trust wherein [Stephany Draper is] or may be the trustor or beneficiary. . . ." AR 83 ¶ 7. Without the durable power of attorney, Draper's parents could not have exercised legal control over their adult daughter's resources because there is no evidence indicating Draper was not a capable adult at the time the trust was created. AR 22. Legal control is essential because under POMS, "[t]he person establishing the trust with the assets of the individual . . . must have legal

---

[11] This argument was also not raised before the ALJ.

authority to act with respect to the assets of that individual. Attempting to establish a trust with the assets of another individual without proper legal authority to act with respect to the assets of the individual will generally result in an invalid trust." POMS SI 01120.203B(1)(g). The court is not persuaded by Draper's second argument.

Finally, Draper argues that the trust agreement does not reference the durable power of attorney agreement, and thus she believes her parents were acting in their capacity as parents when they "established" the trust. Docket 18 at 2. The previous paragraph sufficiently addresses this argument. Draper's parents funded the trust with their daughter's resources. This was only possible because they possessed the power to "transfer assets to" the trust of which Draper was a beneficiary. AR 83 ¶ 7.

Based on the court's review of South Dakota law related to power of attorney agreements, it is apparent that Draper's parents were acting as her agent and thus cannot be considered her "parents" as POMS SI 01120.203B defines the term.

**B. Seed Trusts and Dry Trusts**

Draper also argues that even if her parents were acting under the durable power of attorney her trust still complies with POMS 01120.203B. Docket 18 at 7. This argument was advanced in response to a provision of POMS SI 01120.203B that provides:

> [i]n the case of a legally competent, disabled adult, a parent or grandparent may establish a "seed" trust using a nominal amount of his or her own money, or if State law allows, an empty or dry trust. After the seed trust is established, the legally competent disabled adult may transfer his or her own assets to the trust or another individual with legal authority (e.g., power of attorney) may transfer the individual's assets into the trust.

POMS SI 01120.203B(1)(f). Draper does not argue that her parents established a seed[12] or dry trust, however, but instead contends that her trust complies with the POMS interpretation because her trust conforms to South Dakota state law. Docket 18 at 7.

This argument is not relevant because the ALJ never determined that the trust did not comport with South Dakota trust law, only that the trust did not meet the requirements necessary to comply with § 1396p(d)(4)(A). AR 22-23. Her argument therefore is not responsive to the requirements established in POMS SI 01120.203B and cannot be construed as to satisfy those requirements. Establishing a trust that complies with state law is a necessary, but insufficient, prerequisite to establishing a trust that complies with § 1396p. Arguing that compliance with state law is all that is necessary to comply with § 1396p ignores the qualifying restrictions in § 1396p, as well as the language of § 1382b, which states that most trusts are *not* exempt from counting towards a potential beneficiary's resources. 42 U.S.C. § 1382b(e).

---

[12] In her reply brief Draper concedes that her trust was not a seed trust. Docket 18 at 4, n.1.

The court rejects Draper's argument that her trust complies with § 1396p because it complies with South Dakota law. In this particular case it is not necessary for the court to examine whether South Dakota law permits empty or dry trusts because Draper does not raise the issue, and even if state law allowed such trusts, Draper's trust does not conform to the separate POMS SI 01120.203B(1)(g) requirement that special needs trusts may not be established through a durable power of attorney.[13]

## CONCLUSION

Following review of the record and the relevant law, the court finds that the ALJ was correct to rely on the Commissioner's interpretation, as expressed in POMS SI 01120.203B, in denying Draper SSI benefits. Accordingly, it is

ORDERED that Draper's motion (Docket 12) is denied, and the decision of the Commissioner is affirmed.

Dated July 10, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[13] Because the court denies Draper's motion, Draper is not entitled to fees, costs, or back payment of benefits.